**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CR-80216-DMM**

**UNITED STATES OF AMERICA**

      **Plaintiff,**

**v.**

**JAIME FIGUEROA,**

      **Defendant.**

_____/

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**

Comes now, the defendant, Jaime Figueroa, by and through undersigned counsel, and hereby respectfully files this sentencing memorandum and motion for a downward variance.. In support of this motion, the Defendant states as follows:

**INTRODUCTION**

Mr. Jaime Figueroa is thirty-six years old and will appear before the Court on June 3, 2026 for sentencing as a result of his guilty plea to Promoting Sexual Performance by a Child. Mr. Figueroa entered a timely guilty plea and has accepted responsibility for his actions. His charge carries a mandatory minimum sentence of fifteen years in custody. If Mr. Figueroa's objections to his Pre Sentence Investigation Report are granted, he will be at a total offense level of 36 and a criminal history category of I. Mr. Figueroa is requesting that the court grant a further downward variance and impose the mandatory minimum sentence of fifteen years in this case. Mr. Figueroa respectfully requests that the Court consider his personal history and characteristics and his arguments previously presented to the Court and find that a sentence of fifteen years of incarceration is sufficient, but not greater than necessary to achieve the purpose of sentencing outlined in 18 U.S.C. § 3353(a).

**HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

Mr. Figueroa was born on April 16, 1990 to Angelita Alaniz, a long time sex worker, crack addict, and "despicable human being" who gave birth to five children who were all removed from her custody. Mr. Figueroa and his siblings were severely neglected by Angelita who abused drugs and alcohol and left them with whoever was willing to watch them. After being removed from his mother's custody, Mr. Figueroa was placed in the custody of his aunt and uncle who eventually adopted him and all of his siblings. They gave him love and a stable home and Mr. Figueroa cared deeply for them – and especially his adopted mother Maria Figueroa. Mr. Figueroa suffered serious physical abuse, sexual abuse, and neglect while in the custody of Angelita which left a long-lasting impact on his life. The psychological trauma led to a suicide attempt as a thirteen year old. He then started receiving counseling and taking anti-depressants until the age of 18. After the age of 18, Mr. Figueroa did not receive any additional mental health services until his recent incarceration in the Palm Beach County Jail. Instead, he relied on the support of his long term girlfriend, Jocelyn, with whom he was in a relationship for eleven years (from the age of twenty to thirty-one).

As a teenager, Mr. Figueroa abused alcohol and marijuana. As an adult he began abusing cocaine. And, after the end of his relationship with Jocelyn, Mr. Figueroa started abusing crack cocaine. He eventually ended up in court ordered drug treatment and successfully completed two stints in a residential treatment program. Despite his substance abuse issues, Mr. Figueroa was making efforts to progress in life, attended AA/NA meetings, and was employed for seven years at The Brass Tap restaurant working his way up from line cook to manager. Mr. Figueroa's life started to fall apart, however, when his adopted mother suffered an accident and was injured. She shared with him in confidence that she felt that she would not get better and that she thought she was going to die. Mr. Figueroa was distraught and unable to process the grief and emotions that he

was feeling. He turned to crack cocaine and began abusing crack on a daily basis to the point that family members took note. His family members started commenting to his adopted mother and his younger sister that he was abusing crack which caused him great distress to know that those two people, especially, were hearing about his substance abuse. By the time Mr. Figueroa's adopted mother passed away at the end of 2024, he was not only in the throes of addiction but also experiencing a full-blown mental crisis. Shortly after, his uncle who he was very close to also passed away. Following what could only be described as a mental breakdown at work, Mr. Figueroa lost his job at The Brass Tap. His life was quickly spiraling out of control.

**ACTIONS LEADING UP TO THE INSTANT OFFENSE**

Angelita had also reappeared in Mr. Figueroa's life trying to assert her role as his mother and expressing anger when he advised that she was his biological mother, but not the person he considered to be his mother since she did not raise him. Approximately two months before his arrest in the instant case, Angelita introduced Mr. Figueroa to the minor victim P.R. However, Mr. Figueroa was told that P.R. was nineteen years old. Apparently, Angelita had been driving on the street when she, too impaired to continue driving, happened upon P.R. and a number of teenage girls being harassed by a group of males. Angelita, to the rescue, intervened and invited the teenage girls, along with P.R., into her car and offered them a ride home. At some point, P.R. reconnected with Angelita who then introduced her to Mr. Figueroa. Mr. Figueroa, unemployed, addicted to crack cocaine, and struggling to deal with his grief following the passing of his mother and uncle, was living in a "trailer" that was more like a tiny shed in the back yard behind the house he grew up in which was now owned by his adopted sister. Mr. Figueroa was involved with P.R., who he initially believed to be 19 years old, for approximately two months. P.R. also represented herself as being 19 years of age to Mr. Figueroa's sister who confronted P.R. about her age and that she

did not believe her to actually be an adult. P.R. developed a separate, seemingly "professional", relationship with Angelita independent from her interactions with Mr. Figueroa. Mr. Figueroa was not aware of the nature, scope, or extent of P.R.'s interactions with Angelita.

**THE TRAFFICKING OF P.R., R.B., and C.E.**

On March 1, 2025, P.R. showed up to Mr. Figueroa's trailer/shed with two other girls that he did not know. Mr. Figueroa noticed that the other two girls looked young and asked P.R. how old they were and why she would bring them to his house. The next day, the victims engaged co-defendants Jean and Michel at a convenience store offering to engage in sexual activity. Mr. Figueroa did not play any part in this interaction. Notably, Mr. Figueroa, cracked out and barely functioning, was not present for or participating in any of the interactions with Jean and Michel who communicated directly with the minor victims. Mr. Figueroa did, however, take advantage of the free hotel rooms paid for by the co-defendants after they left. Mr. Figueroa, unable to pay his basic living expenses, expressed to P.R. that he was unable to pay his electric bill. He was given approximately $35 by P.R.

Although she does not appear anywhere in the factual proffer, the pre sentence investigation, or the indictment in the instant case, Angelita was directly involved in the trafficking of the minor victims. She recruited P.R. who in return recruited the younger girls and kept then in line using aggression and threats of violence. Angelita was present in the vehicle with the minor victims and the co-defendants, Angelita was present in the hotel room while the sexual exploitation was occurring, Angelita advised the minor victims of what they needed to do to get paid, what they should not do (allow a man to leave marks without paying extra), and what kind of rates they should be charging for their sexual exploitation. Angelita specifically requested money from P.R.

and in her arrest report is referenced as the person initially collecting money for the commercial sex transactions.

Mr. Figueroa never engaged in sexual activity with R.B. or C.E.

Mr. Figueroa and his co-defendants were originally arrested on state charges of human trafficking. Angelita Alaniz was also arrested on charges of human trafficking in state court. For reasons seemingly unknown to everyone, Ms. Alaniz was not indicted federally for any of her actions. In January 2026, while Mr. Figueroa and his co-defendants were being indicted, Ms. Alaniz was being released from custody on her state court charges on a $25,000 bond with home detention. In April 2026, the state dismissed the human trafficking charges against Ms. Alaniz and refiled an amended information including a charge of aggravated child abuse. Mr. Figueroa has been advised by family members that Ms. Alaniz expects to receive a sentence of one year of incarceration.

## THE PRODUCTION OF A VISUAL DEPICTION INVOLVING THE SEXUAL EXPLOITATON OF A MINOR

Although there is an extensive recitation of the facts related to the trafficking of the minor victims, Mr. Figueroa pled guilty to the charge of production of a visual depiction involving the sexual exploitation of a minor. On Mr. Figueroa's phone there was a 23 second video of Mr. Figueroa involved in sexual activity with 17 year old P.R. While the age of consent to engage in sexual activity is 18 years old under federal law, in thirty-seven states, the age of consent is seventeen or younger. The fifteen year mandatory minimum to be imposed in this case is the same mandatory minimum that would be imposed for sexual contact with a much younger child. Although the Pre Sentence Investigation Report recommends a two level enhancement for the commission of a sexual act or sexual contact, it seems almost a given that a visual depiction

involving the sexual exploitation of a minor would involve some type of sexual act or sexual contact. The need to add additional punishment seems unnecessary.[1]

**18 U.S.C. §3553(a) FACTORS**

The imposition of the fifteen year mandatory minimum sentence in the instant case would be a punishment that is sufficient, but not greater than necessary. Mr. Figueroa requests that the Court impose that sentence after considering the following:

(1) The nature and circumstances of the offense and the defendant have been discussed above.

(2) The need for the sentence imposed – the fifteen year mandatory minimum sentence reflects the seriousness of the offense, promotes respect for the last, and provides just punishment for Mr. Figueroa's offense. Mr. Figueroa previously served six months in jail at the age of nineteen and two days in jail at the age of thirty. Fifteen years is a sufficient deterrent to future criminal activity and protects the public from further crimes of Mr. Figueroa who would not be released from custody until he was fifty years old.

(3) The kinds of sentences available – the court may only impose a term of incarceration followed by supervised release. A term of supervised release will ensure that the Defendant complies with the law.

(4) The kinds of sentence and the established sentencing range – a guidelines sentence in accordance with what has been proposed by the Pre Sentence Investigation puts Mr. Figueroa in a range to impose the maximum possible sentence that could be imposed for the charge. That would mean that for his conduct he could be sentenced to a similar sentence as someone whose crime

---

[1] In fact, the United States Sentencing Commission's October 2021 report on Federal Sentencing of Child Pornography Production Offenses confirms that 80.9% of offenders were sentenced for an offense that involved sexual contact of a minor.

involved a much younger child – including an infant or toddler, involved violence or threats of violence, or was transmitted to others.

(6) The need to avoid unwanted sentencing disparities – even when considering Mr. Figueroa's co-defendants, their guidelines call for a lesser term of incarceration for repeated sexual activity for money with younger children. Furthermore, according to the United States Sentencing Commission's October 2021 report on Federal Sentencing of Child Pornography Production Offenses, 57.2% of offenders received a variance below the applicable guideline range.

(7) The need to provide restitution to any victim – Mr. Figueroa is open to working to provide payment of any restitution amount imposed by the Court.

WHEREFORE, the Defendant respectfully requests for the foregoing reasons that the Court GRANT a downward variance in this case and sentence him to the mandatory minimum sentence of fifteen years.

Respectfully submitted this 2nd day of June, 2026.

By: __/s/Fairuze Sofia_____
Fairuze Sofia, Esq.
Florida Bar #0057354
THE SOFIA LAW FIRM
3313 W Commercial Blvd #190
Fort Lauderdale, FL 33309
Tel: (954) 765-6591
fairuze@fairuzesofia.com

**CERTIFICATE OF SERVICE**

I HEREBY certify that on June 2, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   */s/Fairuze Sofia*
Fairuze Sofia, Esq.
Florida Bar #0057354
**THE SOFIA LAW FIRM**
3313 W Commercial Blvd #190
Fort Lauderdale, FL 33309
Tel: (954) 765-6591
fairuze@fairuzesofia.com