**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**25-CR-80216-MIDDLEBROOKS**

UNITED STATES OF AMERICA,

vs.

JAIME FIGUEROA,

      Defendant.

_____/

**GOVERNMENT'S RESPONSE TO OBJECTIONS TO PRESENTENCE REPORT AND**
**SENTENCING RECOMMENDATION**

      The United States respectfully responds to defendant Jaime Figueroa's ("Figueroa") objections (DE 97) to the presentence report (DE 91). The government recommends a sentence of twenty-seven years imprisonment.

**I.        FACTUAL BACKGROUND REGARDING FIGUEROA**

      On March 1, 2025, three minor victims (CE, RB, PR) left their group foster home and hitchhiked to Figueroa's trailer in Boynton Beach, Florida, where they stayed the night (DE 63, Figueroa's Factual Proffer, ¶ 1). Minor Victim 3 (PR) was dating Figueroa. *Id.* PR was seventeen years old at the time of the offense (PSI ¶ 13). While there, Figueroa had sex with PR (DE 63, Figueroa's Factual Proffer, ¶ 1).

      The next day, on March 2, 2025, the three minor victims left Figueroa's trailer and went to a nearby convenience store in Boynton Beach. *Id.* ¶ 2. RB indicated that PR approached a truck driven by co-defendant Antonio Michel (Michel), with co-defendant Raymond Jean (Jean) as the passenger. *Id.* Michel transported the minor victims to a motel with Jean as the passenger. While

at the motel, Michel had sex with CE and Jean had sex with RB. CE was 15 years old and RB was 16 years old at the time of the offense (PSI ¶ 13).

PR stated that she collected money from the commercial sex and gave most of the cash proceeds to Figueroa. (DE 63, Figueroa's Factual Proffer, ¶ 3). Using Jean's phone, PR called Figueroa's cellphone, who came to the motel and met with the three minor victims. *Id.*

On the same day, March 2, 2025, the minor victims reported they went to a different hotel in Boynton Beach, Florida. *Id.* ¶ 4.   According to RB, at the hotel, she and PR had a threesome with Michel. PR collected the money for the sexual act. *Id.*   Thereafter, the minor victims again called Figueroa to join them. *Id.*   RB reported Figueroa again collected part of the cash the minor victims received for the sexual encounters. *Id.* RB further indicated that Figueroa knew her age because he said, "I don't want to go to jail." *Id.*

On March 3, 2025, Michel rented a room in Lantana, Florida (PSI ¶ 21). RB had sex with Jean. *Id.* Michel had sex with RB. *Id.* RB had sex numerous times throughout the day. *Id.* Figueroa provided RB with crack cocaine, about every three hours. *Id.*

It is important to note that both RB and PR independently told law enforcement that they gave most of the money collected from the sex acts to Figueroa. (DE 63, ¶ 5, Figueroa's Factual Proffer).   PR also used Michel's phone to contact Figueroa who was overheard by the minor victims giving directions on how much money to ask for and how to direct the dates. *Id.*   Figueroa was heard directing PR to ensure the room was paid for through the rest of the night on March 3 to March 4, 2025, so he could come over. *Id.*   Both RB and PR told law enforcement that Figueroa used some of the money collected to pay for his power bill. *Id.*

The minor victims' statements not only corroborate with each other but are also corroborated by Figueroa's admissions in jail calls to law enforcement.   As stated in Figueroa's

factual proffer, Figueroa admitted PR met his mother and PR never had a phone. (DE 63 ¶ 6). Figueroa admitted PR's "friends told me their real ages." *Id.* Figueroa admitted PR gave him money. *Id.*

The minor victims' statements are further corroborated by Figueroa's cellphone. On Figueroa's device, there are text messages threads between Figueroa and PR. *Id.* PR admitted she was using Figueroa's mother's phone, so she could contact Figueroa on his cellphone. *Id.* Below are the messages taken from Figueroa's factual proffer/cellphone between Figueroa and minor victim 3 (PR):

| | |
|---|---|
| Minor Victim 3: | This girl is missing [sic] me off |
| FIGUEROA: | Yea but u need her |
| Minor Victim 3: | Im about to send her to sunrise |
| FIGUEROA: | No u need her around |
| Minor Victim 3: | To get kidnapped |
| FIGUEROA: | **She's your hustle** |
| | **Keep her close an happy** |
| | **She's the play** |
| Minor Victim 3: | Yeah okay I guess but she not really nonthing [sic] |
| FIGUEROA: | Keep her **she needs 2 Keep buddy happy** |
| | Just keep hee [sic] happy n **keeping buddy entertained** |
| | **If there's money to be made with him Keep him happy n She's the that lol** |

(DE 63, Figueroa's Factual Proffer, ¶ 7) (emphasis added).

All minor victims were presented photo arrays for Figueroa and each victim identified Figueroa. *Id.* ¶ 8.

On April 7, 2025, Figueroa was arrested and his phone was seized. *Id.* ¶ 9. A search of his phone revealed 102 videos of child sexual abuse material, with multiple videos depicting prepubescent children, including a male forcing his penis into the child's mouth repetitively. *Id.* Another video included Figueroa penetrating PR. *Id.* On the same day as the production, Figueroa sent a message from his cellphone saying he was home. *Id.*

## II.   ANALYSIS

### A. This Court Should Overrule Figueroa's Factual Objections.

Figueroa objects to the following paragraphs in the offense conduct:

- Paragraph 7 of the PSI states Figueroa and PR had sex in front of RB. Figueroa argues he had sex with PR but not in front of RB (DE 97). This argument does not affect the guidelines and Figueroa's factual proffer does not address such, so the government takes no position as to whether Figueroa had sex in front of RB.

- Paragraph 17 of the PSI states Figueroa came to the Stay Inn Motel and met three girls. Figueroa argues he did not meet the girls at the Stay Inn Motel (DE 97). Figueroa also contends he did not provide any details as to the act that should be performed or how to keep Michel and Jean happy, paying customers (DE 97). Figueroa argues it was his mother who gave the victims instructions (DE 97). The government states that Figueroa met the minor girls the day prior, on March 1, 2025, at Figueroa's trailer, but that he also met up with them at the Stay Inn Motel the next day. These facts were agreed upon by Figueroa in his factual proffer. *See* DE 63, ¶¶ 1, 3. Further, Figueroa did provide details as to the act, and how to keep Michel and Jean happy, as stated in his factual proffer. *See* DE 63, ¶¶ 5, 7 ("Keep her she needs 2 Keep buddy happy). Further, Figueroa was overhead directing PR to make sure the motel room was paid for

through the rest of the night by the johns (Micheal and Jean), and both PR and RB told law enforcement Figueroa used money from that day to pay for his power bill (DE 63, ¶ 5). More importantly, Figueroa's cellphone shows Figueroa told PR that "No u need her around," "she's your hustle," "she's the play," "she needs 2 Keep buddy happy," "just keep [sic] happy n keeping buddy entertained If there's money to be made with him Keep him happy n She's the that lol" (DE 63, ¶ 7).

- <u>Paragraph 20</u>. Figueroa argues that Paragraph 20 states the girls gave most of the money collected from the commercial sex acts to Figueroa. This is actually Paragraph 23. Figueroa argues he received money for his electric bill (DE 97). Again, Figueroa's factual proffer contradicts this statement. *See* DE 63 ¶¶ 3, 4, 5, 6, 7. Not only do the minor victims' statements corroborate each other, but Figueroa's jail call referenced in his factual proffer includes Figueroa admitting PR have him money, and Figueroa's cellphone talks about "If there's money to be made with him Keep him happy." The evidence shows Figueroa received money from PR who received the money from the johns.

- <u>Paragraph 23</u> Figueroa argues that Paragraph 23 states that RB alleged Figueroa knew her age because he said "I just don't want to go to jail" (DE 97). This is actually Paragraph 20. Paragraph 20 states that Figuroa collected part of the cash from PR and used it to buy crack cocaine which he shared with RB and PR. Figueroa only objects to the part that Figueroa knew RB's age because he said "I just don't want to go to jail." This statement was made, and as to why he made it is contradicted by the evidence. Figueroa's factual proffer states that during his jail call, Figueroa admitted that PR's "friends told me their real ages" and that he confronted PR as to why she brought them

and he admitted that PR gave him money (DE 63, Figueroa's Factual Proffer, ¶ 6).

For the above reasons, Figueroa's factual objections to the PSI should be overruled.

**B. This Court Should Overrule Figueroa's Legal Objections.**

Figueroa objects to a two-level aggravating role enhancement and a two-level enhancement for specific offense characteristics because the offense involved the use of a computer to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct (DE 97). Both enhancements in paragraphs 51 and 53 of the PSI apply.

1.  Paragraph 53 of the PSI Correctly Applies the Two-Level Role Enhancement.

Figueroa next objects to Paragraph 43 that Figueroa was the organizer of the sex trafficking acts and therefore should receive an aggravating role enhancement (Figueroa's Objections, DE 97, p. 2). Figueroa argues his mother assisted the minor girls and he did not know the johns. *Id.* Figueroa even admits that the evidence shows he knew what was going on, had conversations about what was going on, and benefited by way of paying his electric bill, sleeping at the hotels paid for by the co-defendants, and purchasing crack cocaine. *Id.* Despite such admissions, Figueroa objects to the two-level enhancement pursuant to § 3B1.1(c) in Paragraph 53 of the PSI. *Id.* at 3.

The aggravating role enhancement applies. Figueroa's objection is contradicted by the evidence. The minor victims independently provided consistent statements that they turned over the proceeds of the sexual acts to Figueroa. Their accounts corroborate one another and are further supported by Figueroa's own communications and admissions.

Specifically, Figueroa's cellphone records show he directed one minor victim (PR) to keep the other two minor victims with a customer ("Buddy") and ensure he remained "entertained." (DE 63, Figueroa's Factual Proffer). These instructions demonstrate Figueroa's exercise of

authority and control over the minors' activities.   In addition, jail calls contain Figueroa's admission that he received money from at least one of the minor victims, further confirming his role in the scheme.

Figueroa now attempts to shift responsibility to his mother, characterizing her as the leader. The evidence does not support that claim. While Figueroa's mother interacted with PR and the minor victims, the mother obtained the additional money on their behalf, and then the mother took those funds and gave them to the minor victim. By contrast, Figueroa personally received proceeds from the minor victims, directed their activities, and exercised decision-making authority over their interactions with the johns. Even accepting Figueroa's argument regarding his mother, then he and his mother are both the leaders of the trafficking organization over the three minor girls and the johns. Accepting Figueroa's argument, his mother knowingly facilitated the sexual exploitation, along with Figueroa, over the minor girls and johns.

Nor is the enhancement undermined by Figueroa's assertion that he did not personally know the customers. In commercial sex trafficking operations, traffickers commonly avoid direct relationships with purchasers. The relevant inquiry is not whether Figueroa knew the customers, but whether he exercised control and authority over the minor victims. The evidence established that he did.  Thus, the aggravating role enhancement pursuant to § 3B1.1 should be applied.

Further, the government notes that the trafficking and production involve the same offense conduct, not merely relevant offense conduct. Importantly, the trafficking and production both involve the same victim, PR. Figueroa continuously exercised authority in conduct that directly facilitated the production offense. It is part of the offense conduct underlying the production offense itself, as the production occurred on February 24, 2025, and the trafficking occurred on March 1-3, 2025, extremely close in temporal proximity and involving the same victim (PR), the

same exploitation scheme, and overlapping facts.[1] The evidence demonstrates substantial factual overlap, including Figueroa's exercise of authority over the minor victims. Figueroa's role in directing and controlling the victims was not separate from the production offense; it is part of the very same exploitation enterprise.

2.   Paragraph 51 of the PSI Specific Offense Characteristics Properly Applies

Figueroa next argues that his cellphone was used to record the image, but there is no evidence in the record it was used to entice the minor to engage in sexually explicit conduct (DE 97).

The evidence shows Figueroa used his cellphone as an instrumentality of the offense. The cellphone was used to create the child sexual abuse material, and Figuera used that same device to communicate with the minor victim (PR) as part of the ongoing exploitation scheme. Further, the fact that some communications occurred after the image was produced does not transform them into unrelated conduct where the production and exploitation were part of the same ongoing exploitation scheme, involving the same victim and the same criminal episode. The same victim is even wearing the "same brown shorts" depicted in other videos involving the criminal episode (Figueroa's Factual Proffer, DE 63 ¶ 10), and thus the offense is not an isolated completed event. Accordingly, the enhancement pursuant to § 2G2.1(b)(6)(B) applies because Figueroa used the cellphone to produce the image and additional communications with PR establish the role in the offense.  The cellphone was not merely a passive recording device. It was the means by which Figueroa recorded the child sexual abuse material and maintained communication with PR through

---

[1] Even if relevant conduct is not considered under 1B1.3, which it should, the production offense cannot be understood in isolation because it is the same continuous criminal venture. It is the offense conduct. The trafficking conduct is not being offered as separate, uncharged conduct that must be swept through in an expansive relevant conduct analysis. Rather, the trafficking and production offenses were components of the same exploitation scheme involving the same minor victim (PR), the same computer/phone used in both trafficking and production, and thus is the same criminal offense conduct.

the cellphone as part of the ongoing sexual exploitation relationship. PR is in multiple videos from the same time period, wearing the same clothing, demonstrating the production is not an isolated event. The cellphone facilitated Figueroa's ongoing access to and exploitation of PR.

### III. SENTENCING RECOMMENDATION AND OPPOSITION TO FIGUEROA'S MOTION FOR DOWNWARD VARIANCE.

Figueroa's guideline range is 292-365 months' imprisonment. The minimum term of imprisonment is 15 years. The government recommends a sentence of 27 years' imprisonment.

In sentencing the defendant, the Court must consider, among other factors, the nature and circumstances of the offense, the seriousness of the offense, and the need to provide just punishment for it. 18 U.S.C. § 3553(a)(1), (a)(2)(A). Further, the Court must make an individualized assessment of the defendant and consider the need for the sentence imposed to promote respect for the law, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C).

Here, a substantial sentence is warranted under the § 3553(a) factors. The nature and circumstances of this offense are exceptionally serious. Although Figueroa pleaded guilty to production of child pornography, the offense did not occur in isolation. The evidence establishes that Figueroa exploited multiple minor victims, trafficked minor girls for commercial sex acts, and personally benefited from their exploitation financially and sexually. Figueroa even supplied crack cocaine to RB who had never previously used the drug. The crack cocaine was provided at regular intervals throughout the exploitation of RB. The production offense was part of a broader pattern of victimization and abuse directed at vulnerable foster children whose supervising adults have failed them their entire lives. Figueroa's conduct reflects a sustained willingness to exploit minors for his own financial and sexual interests. Figueroa exercised authority over the minor victims, directed their activities, and received proceeds generated from their exploitation. The production

of child sexual abuse material of PR further compounded the harm to PR by creating a permanent record of that abuse.

This Court should also consider that investigators recovered additional child sexual abuse material depicting other prepubescent children. Multiple videos depicted prepubescent children. One video depicted a child approximately 5-6 years of age while an adult male forces his erect penis into the child's mouth repetitively. While these images do not form the basis of the offense of conviction, the images are relevant to the Court's assessment of the defendant's history and characteristics, the seriousness of his conduct, and the danger he poses to children.

A substantial sentence is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and to protect the public, particularly vulnerable minors from further crimes by Figueroa. Offenses involving commercial sexual exploitation of children and the production of child sexual abuse material inflict profound and lasting harm on victims. A significant sentence is necessary to deter others who would exploit children for profit or create and possess child sexual abuse material.

WHEREFORE, the government opposes Figueroa's objections to the PSI, Figueroa's request for a downward variance, and recommends twenty-seven years' imprisonment.

Respectfully submitted,

By:  /s/ *Shannon O'Shea Darsch*
SHANNON O'SHEA DARSCH
Assistant United States Attorney
Fla. Bar No. 68566
500 S. Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: (561) 209-1027
Shannon.darsch@usdoj.gov

10

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on June 3, 2026, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.

/s/ Shannon O'Shea Darsch
SHANNON O'SHEA DARSCH
Assistant United States Attorney